Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3336 | **DATE** | 6/18/2002 |
| **CASE TITLE** | Motorola, Inc. vs. DBTel, Inc. & D&B Holding Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion in limine to exclude settlement documents under Federal Rules of Evidence 408 is granted in part and denied in part. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 19 2002 date docketed | |
| | Docketing to mail notices. | | 29 |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 6/18/2002 | |
| KF | courtroom deputy's initials | 02 JUN 18 PM 12:05 U.S. DISTRICT COURT CLERK  date/time received in central Clerk's Office | date mailed notice KF mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOTOROLA, INC.

Plaintiff,

v.

DBTEL INC. AND
D&B HOLDING CO. LTD.

Defendants.

No. 02 C 3336

Judge John A. Nordberg

Mag. Judge Michael T. Mason

DOCKETED
JUN 1 9 2002

**MEMORANDUM OPINION AND ORDER**

**Motorola's Rule 408 Motion in Limine**

Before us is the rather tricky task of determining the correct scope of Fed.R.Evid. 408 where the purported settlement discussions are intertwined with other, substantive matters in the case. Preliminary injunction plaintiff Motorola, Inc. has asked that we exclude from our consideration a broad category of documents and topics relating to its contract with defendant DBTel, Inc., most of which relate to either DBTel's allegation that Motorola breached the parties' assembly agreement ("Agreement") or the parties' attempts to resolve the alleged breaches while simultaneously trying to negotiate the terms for a new contract. Both parties have submitted briefs on the issue, and Motorola has designated a group of documents it contends should be excluded from our consideration; DBTel has responded to Motorola's designation.[1]

---

[1] The documents in question have all been admitted into evidence during the parties' preliminary injunction hearing, subject to Motorola's standing objection that they should be excluded pursuant to Fed.R.Evid. 408. Both parties agreed to produce documents to us knowing that we may later exclude them.



A short recitation of the facts is necessary to understand the context of our decision.[2] Pursuant to the Agreement, DBTel manufactured cellular phones – which had been designed by Motorola – for Motorola to sell in the open market. The Agreement contained an exclusivity provision stating that DBTel was not allowed to design, make or sell cellular phones for anyone other than Motorola during the term of the Agreement and for six months thereafter (The "exclusivity period"). In mid-to-late 2000, the parties were discussing DBTel's design of a new cell phone, the DB2009, which DBTel wanted Motorola to sell as well. In January, 2001, Motorola informed DBTel that it would not be purchasing the DB2009 for sale. Also in late 2000 and early 2001, DBTel informed Motorola that Motorola was not fulfilling its responsibilities pursuant to the Agreement, particularly with regard to the number of phones Motorola was ordering each month. DBTel complained that the unused capacity in its factory was causing it financial hardship, and the parties discussed various proposals regarding DBTel's release from the exclusivity period so that it could sell the DB2009 in the open market. On February 14, 2001, DBTel sent Motorola a letter that reiterated DBTel's losses allegedly caused by Motorola's failure to order phones, as well as listed additional alleged breaches of the Agreement. In this letter, DBTel told Motorola that because of Motorola's material breaches, DBTel was cancelling the Agreement pursuant to its terms.

Motorola did not accept DBTel's termination of the Agreement and denied that it

---

[2] Most of the relevant facts are not in dispute, although the parties do disagree over their interpretation. The facts as we set them forth above do not constitute our formal findings of fact for the purposes of the preliminary injunction.

was in breach. Moreover, it argued that even in cases of alleged breach, the Agreement gave it a 30 day period in which to cure any problems. After the February 14, 2001 letter, the parties continued to discuss their disputes and DBTel's alleged losses. At the same time (and often in the same letters), the parties were also discussing the terms of a new contract for a new cellular phone that was to be jointly designed by both Motorola and DBTel (the "Taishan" phone).

Neither party disagrees that Rule 408 excludes the admission of evidence of conduct or statements made during settlement or compromise negotiations, if such statements are offered to prove or rebut a finding of liability. However, Motorola's request that we exclude every document that may contain some discussion of settlement or compromise is too broad. As we explain below, we do not believe that some of the documentation even constitutes settlement discussions or negotiations, as opposed to facts relevant to the central issues in the case. Further, Rule 408 does not require exclusion of settlement discussions when the evidence is offered for another purpose (other than to prove liability). *See Bankcard America, Inc., v. Universal Bankcard Systems, Inc.* 203 F.3d 477, 483 (7th Cir. 2000). Additionally, we note that the major purpose of Rule 408 is to promote settlement discussions; parties might very well be hesitant to adopt a conciliatory posture if they feared that such discussions could later be used as admissions of liability. *See Winchester Packaging, Inc. v. Mobil Chem. Co.*, 14 F.3d 316, 320 (7th Cir. 1994) (*cited in Bankcard America*, 203 F.3d at 483). The tone and content of some of the documents is not conciliatory but argumentative, as each party makes its strongest case in favor of its position. Since such documents contain the same arguments the parties make in their briefs, there is no concern that

they were made with the expectation that they not be used at trial.

As an initial matter, we find that one topic and certain documents do pertain wholly to settlement issues, and shall be excluded. The issue involves the parties' discussion of how DBTel might mitigate its losses by being allowed to sell the DB2009 in the open market. The negotiation between the parties on this issue never came to fruition, and was clearly intended only for settlement purposes. Thus, DBTel is barred from introducing the fact that Motorola considered releasing it from the exclusivity period (at least with regard to the DB2009) as evidence either that the exclusivity period is not valid or that the DB2009 does not contain any trade secrets.[3]

The next issue Motorola seeks to exclude concerns DBTel's purported termination of the Agreement in response to Motorola's alleged breaches. For several reasons, we disagree that this issue should be excluded. First, the question of whether DBTel terminated the Agreement on February 14, 2001 is a central issue in this case separate from any settlement negotiations the parties may have undertaken to try to resolve DBTel's alleged losses. The termination may have thrust the parties into settlement posture, but it was never an element of any alleged settlement. That is, DBTel did not offer to renege on its termination if the parties could reach some sort of

---

[3] Additionally, DBTel may not use the fact that none of the settlement documents allege that the DB2009 contains Motorola trade secrets or ask that DB2009 not use Motorola trade secrets if its sells the phone in the open market, as evidence that in fact, the DB2009 does not contain Motorola trade secrets. The settlement offers are mere proposals and do not purport to contain all of the terms that would be required if DBTel had accepted one of Motorola's offers to let it sell the DB2009. Thus, we bar the argument than any inference may be drawn from what is not in the settlement letters. However, DBTel is only barred from using the settlement letters to make this argument; it is not barred from generally arguing that Motorola rarely, if ever, alleged that the DB2009 contained trade secrets.

agreement on the company's losses, and regardless of how we eventually rule with regard to the effectiveness of the termination, it is admissible to show DBTel's state of mind towards the Agreement and Motorola's performance under it.

Allowing the parties to use the alleged termination in their cases is not contrary to Rule 408's concern over the chilling of settlement negotiations. The rule prohibits the admission of settlement facts by one party to prove or disprove liability by the other party. We cannot imagine a scenario in which Motorola could use DBTel's termination to prove DBTel is liable under the Agreement; the termination was not a compromise of DBTel's position, it was a strong argument of its position.

For the same reasons, we will not exclude any of the parties' discussions back and forth regarding DBTel's accusations that Motorola breached the Agreement (including those allegations contained in the February 14, 2001 letter), or Motorola's responses that it did not breach. Again, these arguments go to the very merits of the parties' positions regarding their responsibilities under the Agreement and can easily be separated from offers to compromise. Thus, while we will exclude any portions of the letters that indicate a willingness to settle, we will admit those parts regarding the parties' performance under the Agreement.

Next, Motorola seeks to exclude references to the parties' negotiations of a new contract for the manufacture of the Taishan phone. Determining whether the Taishan negotiations were entirely separate from the parties' disagreements concerning the DB2009 and the Agreement (DBTel's position) or were an attempt to cure some of Motorola's alleged breaches under the Agreement through negotiations to manufacture another phone governed by the Agreement (Motorola's position) would require us to

decide one of the ultimate merits of the case. We recognize that the Taishan negotiations are unique and are confident that we can, if necessary, separate any bona fide negotiations over the terms for Taishan from any offers to compromise in settlement. We are aware of no rule that bars us from considering the parties' posture when negotiating a contract, and to the extent that the Taishan discussions were simply a contract negotiation, they are admissible.[4]

Defendant has offered to meet with plaintiff in an attempt to agree to redactions in the documents plaintiff identified as containing settlement discussions. We agree that the parties should undertake such a process in lieu of the Court making its own redactions. However, pursuant to our discussion above, we will exclude the following documents as being purely (or substantially) settlement-related: Pl. exhibits 37, 38, 49, 50, 52, 54 (except for final paragraph concerning termination of Agreement), 56, 58, 59, 60, 61.

Two other documents bear discussion: Pl. exhibits 62 and 64. These documents, (one from Motorola and one from DBTel), contain statements of each parties' position, a disagreement with the other parties' settlement offer, and a counter-settlement, all of which are somewhat intertwined. We will exclude the use of the settlement terms in these letters, but will allow the parties to use other portions of the letters, which do not contain any compromise or conciliatory posture. However, we reserve the right to exclude additional portions of these letters should it become

---

[4] Indeed, if we were to exclude all discussions of the parties' negotiation over Taishan, we would deprive Motorola of its argument that not only was Taishan covered by the Agreement, but the terms under which it was manufactured cured all of the alleged breaches raised in DBTel's February 14, 2001 letter.

apparent that they are being used for an improper purpose.

We hope that this ruling provides the parties with some guidance regarding what issues and documents may not be used in their cases to prove liability. Because the parties continued parts of their business relationship even after their current dispute began, there is no bright line between settlement discussions and other, merits-related issues. As we explained to the parties several times during the course of the hearing, we are in the best position to make distinctions as they arise. If a party feels that the status of a particular document or portion of document is unclear under this ruling, it may ask the Court for clarification.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: June 18, 2002